IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CHARLES MAESTAS,**

       **Plaintiff,**

v.                                No. CIV 08-83 JB/ACT

**THE WARDEN OF THE BERNALILLO
COUNTY DETENTION CENTER AND
THE MEDICAL DEPARTMENT,**

       **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant Warden of the Bernalillo County Detention Center's *Martinez* Report filed May 15, 2009 [Doc. No. 19] and on Defendants Correctional Medical Services, Inc. ("CMS") and Ron Torres' (as to medical issues) *Martinez* Report filed May 14, 2009. [Doc. No. 18]. Plaintiff was given until June 30, 2009, to respond to the *Martinez* Reports; however, he has failed to do so. These Reports will be construed as a motion for summary judgment. This case was referred to the undersigned United States Magistrate Judge on February 14, 2008, to submit proposed findings of fact and recommendation for the disposition of this case pursuant to 28 U.S.C. §636(b)(1) [Doc. No. 4]. Having considered the pleadings and the relevant law, the Court recommends that Plaintiff's Complaint be dismissed with prejudice.

## PROPOSED FINDINGS

### I. Background

    1. This is a *pro se in forma pauperis* civil rights action brought under 42 U.S.C. §1983 by Plaintiff Charles Maestas ("Maestas"). On January 22, 2008, Maestas filed his Complaint alleging Defendants violated his and other inmates' constitutional rights. Specifically, Plaintiff alleges that

Defendants neglected his and other inmates' medical care regarding a skin infection which spread throughout Plaintiff's body and to other inmates; that Defendants have failed to provide a case worker to provide help with filing grievances and complaints; that Plaintiff and other inmates have been isolated from access to all means of complaints or legal avenues as to medical, injuries, or legal; and that Defendants have been billing Plaintiff and other inmates "large amounts of costly bills" for medical care.

2.  Plaintiff does not specify dates upon which he contends his civil rights were violated. It appears that Plaintiff's claims arise from acts or omissions from June 2007, when Plaintiff alleges that no case worker was provided, to January 22, 2008, the date of the Complaint.[1]

## II. Applicable Law

Summary Judgment

3.  Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

4.  "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, the non-moving party must "identify specific facts that show the existence of a

---

[1]To the extent Plaintiff's Complaint could be construed to allege an ongoing violation regarding medical care for his various skin conditions beyond the date of the Complaint, CMS's *Martinez* Report establishes that Plaintiff was seen for medical care for various skin issues 13 times from January 26, 2008 to May 7, 2009 (except for the time period from March 20, 2008 to November 25, 2008 when Plaintiff was not in custody). Rather than showing a deliberate indifference to serious medical needs, the records show that Plaintiff received appropriate and timely care regarding his various skin issues during this time frame.

genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact which would defeat the motion. *Hall v. Bellmon,* 935 F.2d at 1109-1110.

    5. As stated in this Court's Order Directing Submission of *Martinez* Report [Doc. No. 17], a *Martinez* report can be used for summary judgment purposes. In a summary judgment posture, the verified Complaint and the *Martinez* report may be treated as affidavits. *Hall v. Bellmon,* 935 F.2d at 1111.

Exhaustion of Remedies

    6. Under 42 U.S.C. §1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), a prison inmate is required to complete the prison's administrative process before suing over prison conditions. *Booth v. Churner,* 532 U.S. 731 (2001). "There is no question that exhaustion is mandatory under the PLRA" and that unexhausted claims cannot be brought in court. *Jones v. Bock,* 549 U.S. 199, 199-200 (2007) (internal citation omitted). Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *See Booth v. Churner,* 532 U.S. at 740-741; *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). The PLRA's exhaustion requirement applies to all suits arising out of prison life. *Porter v. Nussle,* 534 U.S. 516, 532 (2002); *Jernigan v. Stuchell*, 304 F.3d at 1032. An inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Id.* at 1032.

    7. In a suit governed by the PRLA, the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant must prove: (1) administrative remedies were available to the plaintiff, and (2) the

plaintiff failed to exhaust these remedies.  *Purkey v. CCA Detention Center,* 263 Fed. Appx. 723, 726 (10th Cir. 2008) .

Liability of Defendant Torres

8.  To succeed on a complaint under §1983, a plaintiff must allege some personal involvement by the Defendant in the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008) (citation omitted).  A civil rights action against a public official may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates.  *Ashcroft v. Iqbal,* ____U.S.____, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Furthermore, a "theory of negligent supervision cannot provide a basis for liability under §1983." *Spencer v. Landrith,* 2009 WL 468291 at *2 (10th Cir. 2009) (citation omitted).  Likewise, "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted).  Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitution rights."  *Id.* at 994-995 (citations omitted).

Eighth Amendment Claim

9.  Under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment.[2] *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).  In order to state a cognizable claim, a prisoner must allege acts or

---

[2] Although Plaintiff does not specifically allege an Eighth Amendment claim, by construing Plaintiff's Complaint liberally, this Court finds that Plaintiff is alleging a denial or delay of medical treatment in violation of the Eighth Amendment.

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Id.* at 106.

10.   The deliberate indifference standard has two components, one objective and one subjective. *Wilson v. Seiter,* 501 U.S. 294 (1991). In order to recover, plaintiff must show: (1) that the medical need was objectively sufficiently serious, and (2) that the offending officials acted with a sufficiently culpable state of mind in that they knew or must have known about the serious medical need and intentionally refused to provide medical care or intentionally interfered with treatment. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Deherrera v. Kropinak*, 3 Fed. Appx. 797, 2001 WL 81999 at *2 (10th Circ. N.M. Jan. 31, 2001) (*citing Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

11. A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d at 1209.

12.   With respect to the subjective element, the inmate must allege facts supporting an inference that Defendants knew about and disregarded "a substantial risk of harm to his health or safety." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276-77 (10th Cir. 2001).  Deliberate indifference may be demonstrated when prison officials prevent an inmate from receiving treatment by medical personnel capable of evaluating the need for treatment. *Id.* at 1279 (internal citation omitted).  An intentional refusal is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a culpable state of mind to support his claim of denial of a constitutional right. *Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993) (citation omitted).

13.  A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted or will result in substantial harm. *Sealock v. Colorado,* 218 F.3d

at 1210; *Olsen v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993). Furthermore, "although a delay in treatment is a relevant consideration . . . the ultimate finding of deliberate indifference necessarily requires findings that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that he drew that inference." *Garrett v. Stratman,* 254 F.3d 946, 950 n. 4 (10th Cir. 2001) (internal citation omitted).

14.  Regarding claims that an inmate should have received a certain type of medical treatment that is different from that prescribed by medical personnel, the Tenth Circuit has consistently held that "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual treatment." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980); *see. e.g., Olson v. Stotts*, 9 F.3d at 1477; *James v. Federal Bureau of Prisons,* 79 Fed. Appx. 417, 419 (10th Cir. Oct. 28, 2003); *Hacker v. Wackenhut Correctional Facility,* 95 Fed. Appx. 293, 295 (10th Cir. Apr. 19, 2004).

Allegations of Violations of Other Inmates Rights

15.  A Plaintiff does not have standing to bring claims on behalf of other inmates, especially when the Court is in no position to address whether the other inmates have exhausted their own administrative remedies. *Swoboda v. Dubach,* 992 F.2d 286, 289-290 (10th Cir. 1993) (*pro se* claims regarding conditions at county jail failed to state a claim because inmate lacked standing to bring claims on behalf of other inmates).

**III. Undisputed Material Facts**

16.  The Defendant "Warden of the Bernalillo County Detention Center" is Ronald Torres. ("Torres."). Mr. Torres' correct title is "Director of the Metropolitan Detention Center" ("MDC").

17. The Defendant "The Medical Department" is Correctional Medical Services, Inc., ("CMS"), which is an independent contractor that provides medical services to inmates at the Metropolitan Detention Center.

18. Plaintiff does not allege nor can the Complaint or documents be construed to allege that Torres had any type of personal involvement in Plaintiff's alleged constitutional violation.

19. Plaintiff had various skin conditions while in custody of MDC.

20. MDC has a multi-tiered grievance policy. The policy provides for a written grievance process, including at least one level of appeal.

21. Plaintiff filed a grievance on July 25, 2007, for which a case worker was working on his behalf. This grievance is not the subject of Plaintiff's Complaint.

22. Plaintiff filed a grievance on October 16, 2007, which relates to an alleged skin infection, which is a subject of Plaintiff's Complaint. His grievance states as follows:

> The water burns and eats my skin and every time I shower it gives me a very bad skin infection and my skin won't heal. I have been seen by medical repeatedly. The cream they give me does not work. It keeps my skin moisturized but doesn't heal. I need to be seen by a professional dermatologist.

This grievance was not signed by the Plaintiff and was therefore deemed not valid.

23. Plaintiff filed a grievance on December 28, 2008, which is not the subject of Plaintiff's Complaint.

24. Plaintiff was provided with hydrocerin cream on September 27, 2007, for a skin condition.

25. Plaintiff complained of swelling and burning skin on October 19, 2007, and he was referred to CMS on October 20, 2007. Accent plus lotion and selenium sulfide lotion was provided to Plaintiff on October 23, 2007, and November 3, 2007, respectively.

26. On October 22, 2007, Plaintiff complained of having a skin rash all over his body. Medical staff observed that his face was red, hot to touch, and small cuts were noted on his back and chest. Another referral to CMS was made.

27. A referral for off-site treatment was made on October 23, 2007, for chronic eczema and dermatitis. The diagnosis was confirmed by the offsite provider, UNM Health Sciences Center, and Plaintiff was discharged with prescriptions, including continued use of eucerin cream, prednisone, and Keflex for infection.

28. Plaintiff was seen again on November 21, 2007, when he complained of a rash. The rash was noted by medical personnel, and a plan was formulated to include continuation of Benadryl, Kelfex, and prednisone. Plaintiff was seen for a follow-up on December 3, 2007, and the plan was to taper the prednisone and to continue use of eucerin cream and selenium sulfide lotion.

29. Plaintiff was seen on January 4, 2008, and he was given a supply of both albuterol and medicated skin cream.

30. Plaintiff filed his Complaint on January 22, 2008.

31. MDC Policy No. 1238 provides that: "No inmate will be refused medical, dental, and mental health treatment for financial reasons."

32. Plaintiff was never denied treatment because of financial reasons.

33. Inmates are charged a co-payment for each visit to a provider for examination and treatment. Inmates are charged once per request for health care. If it is determined that an inmate needs to see a doctor, both actions are covered by the same co-payment. If an inmate requests additional care for the same complaint, additional co-payments are required, with limited exceptions. If an inmate requests an exception to the co-payment procedures, it should be done utilizing the inmate request or grievance procedure. Charges are reflected on inmate accounts.

34. Plaintiff was billed for $70 for services performed October 23, 2007, and was billed for $91 for services performed November 6, 2007.[3]

35. Plaintiff's trust account was not charged in 2007 or 2008. The MDC Director did not maintain any negative balance for monies owed, including co-payments.

## IV.  Analysis

### 1.  Plaintiff Failed to Exhaust Administrative Remedies

36. As discussed in detail *supra,* Plaintiff must exhaust all administrative remedies before proceeding with a lawsuit. Plaintiff appears to argue that he could not exhaust the administrative remedies because he did not have access to them. The undisputed material facts establish, however, that Plaintiff had access to and, in fact, utilized the grievance process on three different occasions, including one for his skin condition. Plaintiff's claims regarding Defendant's failure to provide a case worker, Plaintiff's isolation from any access to all means of complaints or legal avenues, and Defendant's billing Plaintiff  "large amounts of costly bills" for medical care were never grieved and, accordingly, Plaintiff failed to exhaust his administrative remedies concerning these issues, and these claims should be dismissed. This Court does note, however, that even if Plaintiff had exhausted his administrative remedies regarding these issues, the undisputed facts show that a case worker was provided and, in fact, helped him with at least his first grievance; that Plaintiff had access to complaint procedures and legal avenues as evidenced by his grievances and the filing of the present Complaint; that Plaintiff was never denied treatment because of financial reasons; and

---

[3] Plaintiff also submitted to this Court a bill for $56 for services performed for Roberto Castro on November 26, 2007. As discussed *infra*, Plaintiff may not assert claims on the behalf of other prison inmates.

that Plaintiff's trust account was not charged in 2007 or 2008 nor were any negative balances for monies owed, including co-payments, maintained.

37. It is unclear to this Court whether or not Plaintiff had an opportunity to exhaust his administrative remedies regarding a skin infection. The undisputed facts show that Plaintiff filed a grievance on October 16, 2007, regarding an alleged skin infection, but it was deemed invalid because it was unsigned. As discussed *supra*, it is the Defendants' burden regarding exhaustion. Defendants do not provide the Court with information as to whether Plaintiff should have been informed or whether he was informed that his grievance was deemed invalid and whether he was given an opportunity to correct the problem. Accordingly, this Court cannot find that Plaintiff failed to exhaust his remedies regarding his skin infection and will, therefore, analyze Plaintiff's medical claim below.

## 2. No Issue of Material Fact exists regarding Defendant Torres' Liability regarding Plaintiff's Medical Claim.

38. As discussed in detail *supra,* in order for a public official to be liable under §1983, a Plaintiff must allege some type of personal involvement by the Defendant in the alleged constitutional violation. Plaintiff does not allege and the Complaint cannot be construed to suggest even under the liberal standard that Defendant Torres had any type of personal involvement in the alleged constitutional violation regarding the medical care of Plaintiff's skin conditions. Likewise, none of the documentation provided in this case supports any such personal involvement. Therefore, Plaintiff's claim against Defendant Torres should be dismissed. However, as discussed below, even if personal involvement were alleged, no issue of material fact exists regarding an alleged Eighth Amendment violation.

**3. No Issue of Material Fact exists regarding an alleged Eighth Amendment Violation**

39. As discussed in detail *supra*, in order for Plaintiff to state a cognizable claim under the Eighth Amendment deliberate indifference standard regarding medical care, Plaintiff must satisfy a two-part test: first, he must show that he had a serious medical need; and, second, he must show that the offending officials acted with a sufficiently culpable state of mind in that they knew or must have known about the serious medical need and intentionally refused to provide medical care or intentionally interfered with treatment.

40. Defendant Torres states that under *Sealock*, *supra,* Plaintiff can satisfy the first prong of the test that requires Plaintiff to have a serious medical condition because Plaintiff was diagnosed with a condition that required prescribed and off-site treatment. [Doc. No. 19, pp. 12-13].  This Court agrees that Plaintiff can satisfy the first prong of the test.

41. However, this Court finds that Plaintiff has not raised a genuine issue of material fact regarding the second prong of the test. By liberally construing Plaintiff's Complaint, Plaintiff appears to argue that medical treatment for his skin conditions was denied and that treatment was delayed.[4]  This Court finds that rather than supporting a claim of deliberate indifference to Plaintiff's medical needs regarding his skin conditions, the facts show appropriate medical treatment with no evidence of denial or delay.  The undisputed documentation shows that for each complaint made by Plaintiff, treatment was given.  On at least one occasion, Plaintiff was treated off-site at the UNM Health Sciences Center.  Likewise, no delay is evidenced by the record.  Plaintiff was treated within a day or two of each complaint.  Because there was no denial or delay in treatment, it is unnecessary

---

[4]Plaintiff also appears to argue that his skin condition wasn't "being treated as it should be."  As discussed *supra,* the Tenth Circuit has consistently held that such a claim does not support an Eighth Amendment claim.

11

for this Court to consider any culpable state of mind of any official; however, this Court notes that Plaintiff did not allege nor provide any support for the required culpability.

### 4. Plaintiff Cannot Allege Violations of Other Inmate Rights

42. Plaintiff claims that other inmates are in need of medical attention, that they are isolated from access to complaint procedures and legal avenues, and that they are being billed for medical care. Plaintiff asks the Court to remedy these issues for the other inmates. As discussed *supra*, a Plaintiff does not have standing to bring claims on behalf of other inmates. Accordingly, this Court recommends that these claims be dismissed with prejudice.

### RECOMMENDED DISPOSITION

This Court recommends that summary judgment be entered in favor of Defendants because there is no genuine issue of material fact requiring that the case proceed to trial and that Plaintiff's claims be dismissed with prejudice.

**Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)©. Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)©, file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.**

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**